UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WILLIAM DIXSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00169-JPH-MG |
| | ) | |
| RICHARD BROWN, | ) | |
| JERRY SNYDER, | ) | |
| CHARLES DUGAN, | ) | |
| RANDALL PURCELL, | ) | |
| JERRICHA MEEKS, | ) | |
| JOSHUA COLLINS, | ) | |
| SHERIFF ROBERT CARTER, | ) | |
| JACK HENDRIX, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment on Affirmative Defense of Exhaustion**

Plaintiff William Dixson was held in solitary confinement at Wabash Valley Correctional Facility for more than five years. Mr. Dixon alleges that during that time he was subjected to oppressive and inhumane conditions and that the decision to keep him in segregation was not meaningfully reviewed as required by law. The defendants assert that they are entitled to summary judgment because Mr. Dixson failed to exhaust available administrative remedies before he filed this lawsuit. For the reasons discussed below, the defendants' motion for summary judgment, dkt. [18], is **granted in part and denied in part**.

## I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty*

1

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The applicable substantive law will dictate which facts are material." *Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## II. Undisputed Facts

Mr. Dixson transferred to Wabash Valley Correctional Facility ("WVCF") from the Pendleton Correctional Facility in April 2015. Dkt. 18-6, ¶ 8. Mr. Dixson was held in department-wide administrative restrictive status housing at WVCF from April 2015 until August 2020, then transferred to general population in August 2020. *Id.* at ¶ 10. Administrative restrictive status housing is intended to separate an inmate who poses a threat to life, self, staff, other offenders, property, or facility security. *Id.* at ¶ 11.

### A. Classification Review

Indiana Department of Correction (IDOC) policy 01-04-101, "Adult Offender Classification," was in effect throughout Mr. Dixon's placement on restrictive status housing. Under the Adult Offender Classification, an inmate may administratively appeal a classification decision from the Supervisor of Classification by submitting a written appeal using State Form 9260, "Classification Appeal," within ten working days from the date of the decision. The initial placement and continued placement on restrictive status housing are both classification decisions. Dkt. 18-6 at ¶ 13. *See also* dkts. 18-8, 18-9, 18-10, 18-11, and 18-12 (Adult Offender Classification policies).

The right to appeal classification and disciplinary sanctions is explained to inmates during orientation upon an inmate's initial arrival at IDOC. Dkt. 18-6 at ¶ 19. Copies of the applicable

policies are available in the law libraries at IDOC adult correctional facilities. *Id.* These appeal processes are available to inmates at all times, including when an inmate is in the infirmary or restrictive status housing units. *Id.* ¶ 20.

Here, prison officials regularly reviewed Mr. Dixson's placement in restrictive status housing. *Id.* ¶ 12; Dkt. 18-7 (Report of Classification Hearing Documents, including numerous Report(s) of Classification Hearing signed by Mr. Dixon concerning his placement in restrictive status housing). Mr. Dixson was provided written notice of his right to administratively appeal his placement in restrictive status housing on several occasions. *Id.* at ¶ 21; Dkt. 18-13 (Department Wide Restrictive Housing Review Forms). Mr. Dixson never appealed his placement on restrictive status housing. Dkt. 18-6 at ¶ 22.

**B. Conditions of Confinement**

WVCF had a grievance program in place that was intended to promote prompt and effective resolution of a broad range of issues or inmate complaints. The WVCF grievance program provides a detailed process and procedure by which an inmate may grieve his complaint. Dkt. 18-1, ¶¶ 5–7, 11–19, 22–39, 43–60; Dkts. 18-2; 18-3; and 18-4 (Grievance Policies).

At all times between April 2015 and August 2020, Mr. Dixson was aware that the grievance process was available to him. Dkt. 18-1, ¶¶ 20–21, 40–42, 61–63. The conditions of Mr. Dixson's confinement while in restrictive status housing, including cell temperature, shower water temperature, and amount of recreation time, were considered grievable issues. *Id.* ¶¶ 19, 33, 54, 67. If Mr. Dixson believed that prison staff were not following policies and procedures, those concerns could have been raised. *Id.* ¶¶ 19, 33, 54.

IDOC records reflect that Mr. Dixson did not file any informal or formal grievances or appeals. Dkt. 18-1 at ¶¶ 65–66.

### III.  Discussion

Defendants argue that they are entitled to summary judgment because Mr. Dixson did not administratively grieve or appeal his complaints related to the claims that he brings in this case.

**A. The Exhaustion Requirement**

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002))). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Inmates are only required to exhaust administrative remedies that are available to them. "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). The Supreme Court has explained that remedies may be deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860 (2016). Thus, administrative remedies are primarily unavailable to inmates where "affirmative misconduct" prevents prisoners from pursuing administrative remedies. *Hernandez v.*

4

*Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Such misconduct may include telling a prisoner that he cannot file a grievance when he in fact can do so, *Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir. 2015); denying a prisoner grievance forms, threatening him, and soliciting other inmates to attack him for filing grievances, *Kaba v. Stepp*, 458 F.3d 680, 686 (7th Cir. 2006); and preventing prisoner access to grievance forms, *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).

"Failure to exhaust is an affirmative defense, so the defendants bear the burden of proof and cannot shift it to require [Mr. Dixson] to show that administrative remedies were unavailable." *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

### B. Availability of the Grievance Process

The undisputed evidence shows that there was a grievance program in place during Mr. Dixson's placement in restrictive status housing; Mr. Dixson was aware of the grievance process; and the grievance process was available to him at all relevant times. Mr. "Dixson admits that he did not file grievances and that his condition of confinement claims should be dismissed." Dkt. 26 at p. 1. Thus, Mr. Dixson's conditions of confinement claims are dismissed without prejudice for failure to exhaust administrative remedies.[1]

### C. Availability of the Classification Appeals Process

The defendants argue that they are entitled to summary judgment on Mr. Dixson's due process claim because Mr. Dixson did not challenge his prolonged placement in solitary

---

[1] All claims raised in the complaint were permitted to proceed at screening. The court understands the following legal claims stated in the complaint, dkt 1 at p. 33, to be resolved in this Order without objection from the plaintiff:
- The Defendants engaged in Cruel and Unusual Punishment of Plaintiff in violation of the 8th Amendment and/or 14th Amendment and/or 4th Amendment.
- The Defendants failed to protect Plaintiff and/or failed to intervene, or were deliberately indifferent, in violation of the 14th Amendment and/or 8th Amendment and/or 5th Amendment and/or 4th Amendment.
- The Defendants unreasonably seized Plaintiff by placing him indefinitely in solitary confinement, in violation of the 4th Amendment.

5

confinement through the Adult Offender Classification Policy. In response, Mr. Dixson argues he could not have utilized the Classification Appeals Process because that process was limited to classification decisions and did not apply to 30-day reviews. Because the Adult Offender Classification policy was not available to challenge 30-day reviews and there was no other process for challenging 30-day reviews, Mr. Dixson had no administrative remedies available to exhaust. Mr. Dixson argues that Indiana law required, but WVCF did not provide, a process to challenge 30-day reviews.

This specific legal argument has been raised by plaintiff's counsel in *Crouch v. Brown*, 21-2422 (7th Cir. 2021), and oral arguments have concluded. Whether Mr. Dixson was entitled to a process through which he could appeal a 30-day review is a question of law. The answer to that question will dictate which facts are material in this dispute. *Nat'l Soffit & Escutcheons, Inc.*, 98 F.3d 262, 265.

Accordingly, the defendants' motion for summary judgment is **denied without prejudice.** Plaintiff's counsel is directed to notify the court when the Seventh Circuit has issued an opinion in *Crouch*, and both parties will then be given an opportunity to explain that ruling's impact on the defendants' affirmative defense.

### IV. Conclusion

Defendants' motion for summary judgment, dkts. [18], is **granted** on the conditions of confinement claims and **denied without prejudice** on the due process claims pending resolution of the appeal in *Crouch v. Brown*, 21-2422 (7th Cir. 2021).

**SO ORDERED.**

Date: 2/22/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel